# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

SEAN WRIGHT,                        )
                                    )
     Petitioner,              )
                                    )
    vs.                          )   Case No.  11-0462-CV-W-DGK-P
                                    )
MICHAEL BOWERSOX,                   )
                                    )
     Respondent.             )

## OPINION AND ORDER DENYING WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner, a convicted state prisoner currently confined at the South Central Correctional Center in Licking, Missouri, has filed <u>pro se</u> a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2005 convictions and 2006 sentences for two counts of statutory sodomy, which were entered in the Circuit Court of Buchanan County, Missouri. Petitioner's conviction was affirmed on direct appeal (Respondent's Exhibit E), and the denial of his motion for post-conviction relief filed pursuant to Mo. Sup. Ct. R. 29.15 was upheld on appeal thereof (Respondent's Exhibit K). Petitioner raises twenty-two (22) grounds for relief. Respondent contends that Grounds 2-18 are procedurally defaulted, Grounds 1, 19, 21, and 22 are without merit, and Ground 20 is not cognizable under 28 U.S.C. § 2254.

## FACTUAL BACKGROUND

In affirming the judgment of conviction and sentence, the Missouri Court of Appeals, Western District, set forth the following facts:

> The convictions resulted from acts that Wright committed against Barbara Meers' daughters, T.H. and S.H. Wright and Meers had cohabitated since 1995. When T.H. was eight-years-old, Wright began sexually abusing her approximately

three times a week. He began sexually abusing T.H.'s sister, S.H., when S.H. was 10-years-old and sexually abused her an average of one to two times a month. Neither T.H. nor S.H. disclosed the abuse because they feared Wright, who drank heavily and was physically abusive, and because Wright told T.H. that he would kill her mother and sisters if she told anyone about the abuse. Wright continued sexually abusing T.H. and S.H. until 2001, when Meers ended her relationship with Wright after he threatened to kill her.

After Meers ended her relationship with Wright, S.H. told Meers that Wright had been touching her and "messing with her." S.H. made Meers promise not to tell anyone or do anything about it, so Meers did not report the abuse to authorities. During 2003, Wright's sister Michelle Wahlers, called Meers and suggested that Meers talk to her daughters because of "certain things" Wahlers had learned about her own daughter. Meers asked T.H. and S.H. whether or not Wright had ever done anything inappropriate. S.H. repeated what she had told her mother before, but did not tell her any details. T.H. did not disclose the abuse to Meers; instead, she told Meers' fiancé. Meers reported her daughters' reports to a St. Joseph police detective, who interviewed the girls.

The state charged Wright with statutory sodomy in the first degree and statutory sodomy in the second degree. Wright's first trial ended in a hung jury. Before his second trial, Wright moved to suspend the proceedings. In his motion, Wright alleged that he was awaiting trial in Clay County on similar charges and that it had ordered a psychological evaluation to determine his fitness to proceed to trial in that case. The circuit court denied Wright's motion to suspend the proceedings, finding that it was not bound by the Clay County circuit court's determination. Wright then requested that the circuit court allow him to represent himself. After an examination, the circuit court sustained Wright's request but appointed counsel to help him if he needed assistance during the trial. The jury convicted Wright on both counts, and the court sentenced him to consecutive terms of life and seven years in prison.

Wright first complains that the circuit court erred in allowing the prosecutor to inform the venire panel during *voir dire* that he had threatened Meers and her daughters. After telling the panel about the threats, the prosecutor asked whether or not the threats or the girls' delay in disclosing the abuse would cause the panel members to have difficulty listening to the girls' testimony and deciding whether or not to believe the girls. Wright also alleges that the circuit court erred in allowing the prosecutor to ask the panel members, after informing them that only five percent of sexual assault cases have physical evidence, whether or not any of them would require presentation of evidence. Wright also argues that the circuit court erred in permitting the prosecutor to ask the panel members whether or not they believed that child abuse victims should act in a particular way.

. . . .

Wright next claims that the circuit court erred in overruling his objection to the prosecutor's comment in opening statement that Wright had admitted molesting his niece. During his opening statement, the prosecuting attorney described what Meers' testimony would be concerning the telephone call from Wahlers. He told the jury that Meers would testify that during the call Wahlers told Meers 'about a phone call that she'd had with [Wright] wherein he had confessed to having molested [Wahlers]' daughter, [A.N.W.]. [Wahlers] suggested to [Meers] . . . that she then talk with her girls to see if . . . anything had happened." On this same issue, Wright also argues the court erred in permitting the prosecutor to elicit evidence from Meers that Wahlers called Meers and "relate[d] certain things" to her regarding her daughter and suggested Meers talk to her daughters.

Wright raised a hearsay objection to the prosecuting attorney's opening statement. The circuit court overruled Wright's hearsay objection, but it cautioned the prosecutor not to make any further references to Wright's alleged sexual abuse of A.N.W. Wright did not include this claim of error in his motion for new trial. Wright did not object to Meers' testimony. He now argues that the opening statement and Meers' testimony constituted inadmissible hearsay and propensity evidence. He asks that we review his claim for plain error.

. . . .

Wright's final point is that the circuit court abused its discretion in finding that he was competent to waive his right to counsel and to proceed to trial. After the jury found Wright guilty but before the circuit court sentenced him, the prosecutor advised the court that the report from Wright's psychological evaluation in the Clay county case indicated that Wright was not competent to proceed to trial. Because of this finding, the circuit court ordered Wright to undergo psychological evaluation.

The circuit court held a competency hearing. Arnaldo A. Berges, a psychiatrist, and Jeanette Dunkin, a psychologist, evaluated Wright's competency for the Clay County case. They testified, as did Jeffrey Kline and Delaney Dean, psychologists whom the circuit court had ordered to evaluate Wright's competency for this case. Following the hearing, the circuit court concluded that Wright was competent to waive his right to counsel and to proceed to trial.

Respondent's Exhibit E, pp. 1-6.

Before the state court findings may be set aside, a federal court must conclude that the state

court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432

(1983). Credibility determinations are left for the state court to decide. <u>Graham v. Solem</u>, 728 F.2d

1533, 1540 (8th Cir. en banc), <u>cert</u>. <u>denied</u>, 469 U.S. 842 (1984). It is petitioner's burden to establish

by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1]

Because the state court's findings of fact have fair support in the record and because petitioner has

failed to establish by clear and convincing evidence that the state court findings are erroneous, the

Court defers to and adopts those factual conclusions.

## GROUNDS 2-18

In Grounds 2, 5, 7-9, and 11, petitioner claims that trial counsel was ineffective for failing

to request a competency evaluation of petitioner, refusing to secure a conflict counsel to represent

petitioner, failing to assist petitioner with a motion for a new trial, illegally backdating petitioner's

mail, covering up prosecutorial misconduct, failing to subpoena a doctor and a caseworker, and

failing to subpoena a furnace repairman. Doc. No. 1, pp. 6, 14, 16-18, 21. In Grounds 14-16, and

18, petitioner claims that the prosecutor knowingly introduced perjured testimony from witnesses

and "took full advantage of petitioner's pro se status." Doc. No. 1, pp. 24-26. In Grounds 3, 4, and

13, petitioner claims that the trial court erred by failing to give petitioner a competency evaluation

until after trial, refusing to hear petitioner's motion alleging a conflict of interest before the court

heard petitioner's motion to represent himself, and refusing to allow petitioner to call his trial

attorney and prosecutor as witnesses. Doc. No. 1, pp. 8-9, 13 In Ground 10, petitioner claims that

appeal counsel was ineffective for intentionally filing an incomplete record on appeal. Doc. No. 1,

p. 19. In Ground 12, petitioner claims that his diagnosis has been changed from bipolar disorder to

---

[1]In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

schizoaffective bipolar type. Doc. No. 1, p. 22. Finally, in Ground 17, petitioner claims B.M's testimony contradicts her previous statements to a social worker. Doc. No. 1, p. 27.

"A habeas petitioner is required to pursue all available avenues of relief in the state courts before the federal courts will consider a claim." Sloan v. Delo, 54 F.3d 1371, 1381 (8th Cir. 1995), cert. denied, 516 U.S. 1056 (1996). "If a petitioner fails to exhaust state remedies and the court to which he should have presented his claim would now find it procedurally barred, there is a procedural default." Id. Petitioner procedurally defaulted Grounds 2-18 by failing to include the claims in his post-conviction appeal. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997)(recognizing that failure to present claims in the Missouri courts at any stage of direct appeal or post-conviction proceedings is a procedural default), cert. denied, 523 U.S. 1010 (1998).

A federal court may not review procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Petitioner states that a "conflict of intrest [sic] with the public defender" was the cause of his procedural default on these claims. Doc. No. 1, p. 11. In support, petitioner presents several exhibits as evidence that petitioner's public defender caused petitioner's procedural default by "filing motions he had no intention of working," removing impeachable statements, failing to tell the court about petitioner's severe mental problems, withholding information and evidence helpful to petitioner's defense, helping the state question witnesses at depositions, covering up prosecutorial misconduct, frequently lying to petitioner, and preventing anyone from making statements at trial concerning petitioner's mental illness. Doc. No. 1, p. 34.

Respondent argues that petitioner's alleged conflict is simply a form of ineffective assistance of counsel and that ineffective assistance of post-conviction relief counsel cannot overcome a procedural default. Doc. No. 14, p. 5. In response, petitioner argues that he is not claiming that ineffective assistance of counsel caused his procedural default and that respondent fails to "challenge the validity of the other causes." Doc. No. 21, p. 1. Instead, petitioner contends that his public defender "had a clear conflict of interest with petitioner in that he sabotaged petitioner's defence [sic]" by attempting to "help convict his own client whom was charged with a child sex offense." Doc. No. 21, p. 2.

Ultimately, all of petitioner's discussion on the cause for his procedural default concerns the mishandling of petitioner's case by petitioner's public defender. If petitioner contends that ineffective assistance of trial or Rule 29.15 appellate counsel caused his state procedural default, he may not do so because claims of ineffective assistance of counsel must have been independently presented in a timely manner to the state courts in order to be used to show the alleged cause for state procedural default. Edwards v. Carpenter, 529 U.S. 446, 451 (2000). Moreover, ineffective assistance of post-conviction counsel or post-conviction appellate counsel cannot constitute cause for petitioner's default. See Clemmons v. Delo, 124 F.3d 944, 947-48 (8th Cir. 1997); see also Christenson v. Ault, 598 F.3d 990, 995-96 (8th Cir. 2010) ("there is no federal constitutional right to the effective assistance of post-conviction counsel") (citation omitted).

Furthermore, regardless of whether petitioner may state a claim of ineffective assistance of counsel, petitioner also has failed to show that a fundamental miscarriage of justice will result if his defaulted claims are not considered. See Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006) (petitioner must present new evidence that affirmatively demonstrates that he is actually innocent

of the crime for which he was convicted in order to fit within the fundamental miscarriage of justice exception), cert. denied, 549 U.S. 1036 (2006). As a result, Grounds 2-18 are procedurally defaulted and will be denied.

## **GROUNDS 1 AND 19**

In Grounds 1 and 19, petitioner argues that the trial court erred in finding he was competent to stand trial and waive counsel. Doc. No. 1, pp. 5, 29-30. The Missouri Court of Appeals, Western District, denied Grounds 1 and 19 by stating:

> "The trial court's determination of competency is one of fact, and must stand unless there is no substantial evidence to support it." State v. Anderson, 79 S.W.3d 420, 433 (Mo. banc 2002). In deciding whether or not the evidence is sufficient to support the circuit court's determination, we do not independently weigh the evidence. Id. Rather, we accept as true all evidence and reasonable inferences that support the circuit court's determination. Id.

> The circuit court found that Wright suffered a bi-polar disorder, but this disorder did not render Wright incompetent. The testimonies of Kline, Dunkin, and Berges supported this finding. The circuit court rejected Kline's, Dunkin's, and Berges' opinion, however, that Wright was experiencing a manic episode with psychotic features, specifically, delusional thinking, which rendered him incompetent.

> Wright claims that the circuit court's conclusion that he was not experiencing a manic episode or suffering from delusional thinking "lacked any basis in the evidence." On the contrary, the circuit court explained in detail why it rejected Kline's Dunkin's and Berges' opinions concerning the alleged manic episode. The circuit court found that Kline's opinion was largely based on Dunkin's and Berges' report. The circuit court considered Dunkin's and Berges' report to be suspect because it was based, "in large degree," on Wright's "unconfirmed, self-reporting" during their approximately two-hour interview, which occurred two weeks before the waiver of counsel hearing and one month before the trial. The circuit court also found that Kline, Dunkin, and Berges lacked sufficient understanding of the criminal process because their opinion that Wright was suffering from delusional thinking was based on his complaints against his attorney, the prosecutor, and law enforcement, and his belief that they were conspiring against him.

> The court agreed with Dean, who was a prosecutor and criminal defense attorney before becoming a forensic psychologist, that Wright's complaints did not

indicate delusional thinking but were typical of a criminal defendant who was trying to shift the focus away from his criminal behavior and to manipulate the system. The circuit court also noted that Dunkin and Berges testified that at least some of the elements of mania would have been observable to laypersons during the trial, and the circuit court noted that it did not see Wright exhibit any of the elements of mania during either the waiver of counsel hearing or the three-day trial. Instead, the circuit court observed, Wright's "responses were all appropriate." It said that he "had no difficulty in understanding the Court or keeping his mind on the subject at hand," his "speech was not pressured and he showed no signs of hyperactivity," and his "thinking was logical and focused."

Wright essentially takes issue with the court's accepting Dean's opinion, instead of the other experts' opinions, as to whether or not he suffered from delusional thinking. "[A] mere disagreement among experts does not necessarily indicate error on the part of the trial court." Id. The circuit court's duty is "to determine which evidence is more credible and persuasive." Id. In this case, the court found certain portions of each of the experts' opinions to be credible and more persuasive than others. Substantial evidence supports the circuit court's determination that Wright was competent to waive counsel and to proceed to trial.

Respondent's Exhibit E, pp. 6-8.

"It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." Drope v. Missouri, 420 U.S. 162, 171 (1975). The competency standard to waive the right to counsel is the same as the competency standard to stand trial. Godinez v. Moran, 509 U.S. 389, 399-400 (1993). A state court's conclusion regarding a defendant's competency is a determination on the merits of a factual issue and, therefore, is entitled to a presumption of correctness on federal habeas review. Demosthenes v. Baal, 495 U.S. 731, 735 (1990) (citing Maggo v. Fulford, 462 U.S. 111, 117 (1983)). "A federal court may not overturn such determinations unless it concludes that they are not 'fairly supported by the record.'" Demosthenes, 495 U.S. at 735 (citing 28 U.S.C. § 2254(d)(8)).

Petitioner fails to show that the state court's determination that he was competent to stand trial

and waive counsel was not fairly supported by the record. The Missouri Court of Appeals, Western District, found that petitioner's claims only amounted to a disagreement with the circuit court over which experts were more credible and that the circuit court's determination that Wright was competent to waive counsel and proceed to trial was supported by substantial evidence. Respondent's Exhibit E, p. 8. Because the state court's determination was not based upon an "unreasonable determination of the facts in light of the evidence" or a misapplication of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2), Grounds 1 and 19 will be denied.

## GROUND 21

In Ground 21, petitioner contends that, in voir dire, the trial court erred in allowing the state to discuss threats made against the complaining witness, to ask whether or not the threats or the girls' delay in disclosing the abuse would cause the panel members to have difficulty believing the girls, to inform the panel that only five percent of all abuse cases result in physical findings, and to ask whether or not the panel members believed that child abuse victims should act in a particular way. Doc. No. 1, p. 31. The Missouri Court of Appeals, Western District, denied Ground 21 by stating:

> Wright contends that these questions were argumentative and, as posited, caused the jury to speculate and to commit themselves to a course of action based on anticipation of what the evidence would be. Wright concedes that he did not preserve this issue for our review because he did not object to the prosecutor's questions during voir dire. He asks for plain error review.
>
> Review of plain error under Rule 30.20 involves a two-step process. State v. Dudley, 51 S.W.3d 44, 53 (Mo. App. 2001). First, we determine whether or not the claimed error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted[.]'" State v. Brown, 902 S.W.2d 278, 284 (Mo. banc), cert. denied, 516 U.S. 1031 (1995). We must determine "whether, on the face of the claim, plain error has, in fact, occurred." Dudley, 51 S.W.3d at 53. Errors are plain if they are evident, obvious, and clear. State v. Hawthorne, 74 S.W.3d 826, 829 (Mo. App. 2002). In the absence of such

error, we should decline to exercise our discretion to review the claimed error under Rule 30.20. If we find plain error on the face of the claim, we may proceed, at our discretion to the second step to consider whether or not a miscarriage of justice or manifest injustice will occur if the error is left uncorrected. Dudley, 51 S.W.3d at 53.

From the face of this record, we do not discern plain error. Wright's claim does not facially establish substantial grounds for believing that he was a victim of manifest injustice. Viewed in their context, the prosecutor's questions did not constitute argument or "'a presentation of the facts in explicit detail,'" both of which are prohibited. State v. Clark, 981 S.W.2d 143, 146 (Mo. banc 1998) (citation omitted). The questions also did not impermissibly seek to induce panel members to pledge to certain actions. State v. Dunn, 7 S.W.3d 427, 432 (Mo. App. 1999). Rather, the prosecutor's questions probed for any preconceived prejudices which would have prevented the jurors from following the court's instructions concerning the credibility of witnesses and the prosecutor's burden of proof. See id.

Respondent's Exhibit E, pp. 3-4.

The Eighth Circuit has held that "[h]abeas corpus relief is available only where errors of constitutional magnitude have occurred." Carter v. Armontrout, 929 F.2d 1294, 1296 (8th Cir. 1991). Moreover,

'[i]nappropriate prosecutorial comments, standing alone, [do] not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding. Instead, . . . the remarks must be examined within the context of the trial to determine whether the Prosecutor's behavior amounted to prejudicial error.'

United States v. Franklin, 250 F.3d 653, 660-61 (8th Cir.), cert. denied, 534 U.S. 1009 (2001) (citing United States v. Young, 470 U.S. 1, 11-12 (1985)). "[I]it is not enough that the prosecutors' remarks were undesirable or even universally condemned," but rather, the "relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citations and internal quotations omitted).

The prosecutor's remarks to the voir dire panel did not amount to a denial of due process.

The Missouri Court of Appeals, Western District, found that the prosecution's questions were permissible because they did not constitute argument or a presentation of facts in explicit detail and because they were appropriate in probing the panel for any preconceived prejudices. Respondent's Exhibit E, p. 4. Because the state court's determination was not based upon an "unreasonable determination of the facts in light of the evidence" or a misapplication of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2), Ground 21 will be denied.

## GROUND 22

In Ground 22, petitioner contends that the trial court erred in overruling petitioner's hearsay objection to the prosecutor's opening statement that petitioner's sister, Michelle Wahlers called the victims' mother, Barbara Meers, and told her that petitioner had admitted to molesting Wahlers' daughter. Doc. No. 1, p. 31. Furthermore, petitioner argues the court erred in permitting the prosecutor to elicit evidence that Wahlers called Meers and "relate[d] certain things" and suggested that Meers talk to her own daughters. Id. Petitioner argues that the opening statement and Meers' testimony constituted inadmissible hearsay and propensity evidence. Id. The Missouri Court of Appeals, Western District, denied Ground 21 by stating:

> From the face of this record, we do not discern plain error. Wright's claim does not facially establish substantial grounds for believing that he was a victim of manifest injustice. The prosecuting attorney's comment was made in the context of explaining why Meers asked her daughters about any inappropriate behavior two years after she had ended her relationship with Wright and why her daughters waited until then to reveal the abuse. The prosecuting attorney did not offer the evidence for the truth of the matter asserted; therefore, it was not hearsay. State v. Murray, 744 S.W.2d 762, 773 (Mo. banc), cert. denied, 488 U.S. 871 (1988). Moreover, "[i]n reviewing the opening statement for plain error, there is no manifest injustice unless the opening statement had a decisive effect on the jury's determination." State v. Copeland, 928 S.W.2d 828, 842 (Mo. banc 1996), cert. denied, 519 U.S. 1126 (1997). Wright failed to demonstrate that the prosecutor's brief comment in opening statement had a decisive effect on the jury's determination. Likewise, the question

to Meers about whether Wahlers 'relate[d] certain things' to her about A.N.W. was not hearsay and was too vague to constitute evidence of uncharged misconduct. State v. Slagle, 206 S.W.3d 404, 410 (Mo. App. 2006).

Respondent's Exhibit E, pp. 5-6

State trial courts are afforded wide discretion with evidentiary rulings. "Questions regarding admissibility of evidence are matters of state law, and they are reviewed in federal habeas inquiries only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process." Rousan v. Roper, 436 F.3d 951, 958 (8th Cir. 2006) (citation and internal quotations omitted), cert. denied, 549 U.S. 835 (2006); see also Bell-Bey v. Roper, 499 F.3d 752, 759 (8th Cir. 2007), cert. denied, 128 S. Ct. 2426 (2008).

"The exclusion [or admission] of [evidence] based on state evidentiary rules results in the denial of due process only if there was an impropriety so egregious that it made the entire proceeding fundamentally unfair." Skillicorn v. Luebbers, 475 F.3d 965, 972 (8th Cir. 2007) (citation omitted), cert. denied sub nom. Skillicorn v. Roper, 552 U.S. 923 (2007). "To meet this burden, a habeas petitioner must show that 'absent the alleged impropriety the verdict probably would have been different.'" Id. (quoting Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995) (rehearing denied)).

Petitioner fails to meet this standard. The statements concerning Wahler's telephone conversation with Meers were not made in order to establish the fact of petitioner's abuse of Meers' daughters. Instead, the comments explained why the claims of abuse had not surfaced until two years after Meers and petitioner ended their relationship. Furthermore, even if the statements were excluded, the outcome of the case likely would not have been different. The record does not evince that the alleged error was "so conspicuously bad that it fatally infected the trial and rendered it

fundamentally unfair." <u>Troupe v. Groose</u>, 72 F.3d 75, 76 (8th Cir. 1995) (citing <u>Anderson v. Goeke</u>, 44 F.3d 675, 679 (8th Cir. 1995)).

The Missouri Court of Appeals, Western District, found that (1) petitioner failed to show that the prosecutor's opening statement had a decisive effect on the jury's determination and (2) that the question to Meers was not hearsay and was too vague to constitute evidence of uncharged misconduct. Respondent's Exhibit E, pp. 5-6. Because the state court's determination was not based upon an "unreasonable determination of the facts in light of the evidence" or a misapplication of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2), and because the admission of the evidence at issue did not amount to a denial of due process, Ground 22 will be denied.

## **GROUND 20**

In Ground 20, petitioner contends that the post-conviction relief motion court erred and abused its discretion in denying petitioner's "motion to hold open the evidence" so that petitioner could present testimony from another expert and in denying petitioner's "motion to vacate, reopen the evidence and reconsider." Doc. No. 1, p. 30. Respondent argues that petitioner's claim is not cognizable in federal habeas because the claim does not call petitioner's conviction into question. Doc. No. 14, p. 1. Instead, respondent contends that petitioner's claim only challenges the state court's decision on a question of state procedure and, therefore, does not involve a federal question. <u>Id</u>.

Because the denial of peitioner's motions to the post-conviction relief motion court hinges on state procedure, petitioner primarily presents an issue of state law, which the state courts specifically have rejected as without merit. A federal court is bound by a state court's interpretation of state law in federal habeas corpus proceedings unless petitioner's convictions violate the United

States Constitution or federal law. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991) ("'federal habeas corpus relief does not lie for errors of state law'"). Because the motion court's decision was based upon a matter of state procedure not cognizable under 28 U.S.C. § 2254, Ground 20 will be denied.

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." <u>Tennard v. Dretke</u>, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. <u>See</u> 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.

 /s/ Greg Kays                                  
GREG KAYS
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:   October 25, 2011   .